## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID RADI, CURLINE G. REGISTE, and YAMIRA COLLAZO, individually, and on behalf of other members of the public similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>FCA ("Fiat Chrysler Automobiles") US LLC, a Delaware Corporation, HYUNDAI MOTOR AMERICA, INC., a Delaware Corporation, TOYOTA MOTOR SALES, U.S.A, INC.., a California Corporation, KIA MOTOR AMERICA, INC., a California Corporation, TOYOTA MOTOR CORPORATION, and ZF TRW AUTOMOTIVE HOLDINGS CORP., a Delaware Corporation,<br><br>        Defendants. | Case No.: 19-cv-2769<br><br>**CLASS ACTION COMPLAINT** |

1

# Table of Contents

NATURE OF THE ACTION ................................................................................................ 4

JURISDICTION AND VENUE ......................................................................................... 6

THE PARTIES.................................................................................................................. 7

    I.    Defendants ........................................................................................................... 7

    II.   Plaintiffs .............................................................................................................. 8

    a.   New York Plaintiff............................................................................................... 8

    b.   Georgia Plaintiff.................................................................................................. 9

    c.   Pennsylvania Plaintiff ......................................................................................... 9

GENERAL FACTUAL ALLEGATIONS .......................................................................... 9

    I.    Definitions............................................................................................................ 9

    II.   The ACU and ASIC Defect ................................................................................ 10

    III.  Defendants Knew of the ACU Defect Years before Instituting a Partial Recall .......... 12

    IV.  Defendants' Misrepresentation and Omissions to the Public and NHTSA ................... 16

TOLLING OF THE STATUTE OF LIMITATIONS .................................................... 19

    I.    Fraudulent Concealment .................................................................................... 19

    II.   Estoppel.............................................................................................................. 20

    III.  Discovery Rule ................................................................................................... 20

CLASS ACTION ALLEGATIONS ................................................................................ 20

    I.    The Class ............................................................................................................ 21

    II.   Numerosity......................................................................................................... 22

    V.   Predominance of Common Issues....................................................................... 22

    VI.  Typicality ........................................................................................................... 25

    VII.  Adequate Representation.................................................................................... 26

    IV.  Superiority.......................................................................................................... 26

REALLEGATION AND INCORPORATION BY REFERENCE .................................. 28

CLAIMS FOR RELIEF .................................................................................................. 28

    I.    FEDERAL CLAIMS ......................................................................................... 28

        Violation of the Racketeer Influenced and Corrupt Organizations Act ................................ 28

        Violation of the Racketeer Influenced and Corrupt Organizations Act18 U.S.C. § 1962(d) 38

Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ..................................... 41

II.  COMMON LAW CLAIMS ............................................................................. 44

Fraud ....................................................................................................... 44

Unjust Enrichment ................................................................................... 48

III.  NEW YORK STATUTORY CLAIMS ............................................................ 48

Unfair and Deceptive Business Practices N.Y. GEN. BUS. L. § 349 ................. 48

Violation of New York Gen Bus. L. § 350 ................................................... 58

Breach of Implied Warranty of Merchantability/Warranty ........................... 59

Breach of Express Warranty ..................................................................... 60

IV.  PENNSYLVANIA STATUTORY CLAIMS ..................................................... 63

VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW (PA. UTPCPL) ....................................... 63

Breach of Implied Warranty of Merchantability/Warranty ........................... 64

Breach of Express Warranty ..................................................................... 66

V.  GEORGIA STATUTORY CLAIMS ............................................................... 69

Violation of the Georgia Fair Business Practices Act, § 10-1-390 et seq. ............... 69

Breach of Implied Warranty of Merchantability/Warranty ........................... 71

Breach of Express Warranty ..................................................................... 73

Plaintiffs DAVID RADI, CURLINE G. REGISTE and YAMIRA COLLAZO, individually, and on behalf of all persons in the United States, members of the New York Subclass, the Pennsylvania Subclass, and the Georgia subclass, and based on information and belief, alleges as follows:

## NATURE OF THE ACTION

1. One of the most basic safety features in any modern automobile is the airbag. In this case, the National Highway Traffic Safety Administration ("NHTSA") has estimated that some 12.5 million vehicles may contain a defective Airbag Control Unit ("ACU") designed and manufactured by ZF-TRW and supplied to numerous vehicle manufacturers, including Hyundai, Kia, Mitsubishi, Toyota, Honda and Fiat Chrysler US ("FCA").

2. The defect in the ACU occurs because the application specific integrated circuit ("ASIC") becomes over stressed by excess electrical energy generated during the crash. This ASIC defect then causes a failure in the ACU and neither the airbags nor the seat belt pretensioners will deploy.

3. ZF-TRW, Hyundai, FCA and Toyota became aware of the ACU defect as early as 2011, but did nothing to protect consumers or warn of the product dangers until 2018. From 2011 through 2015, ZF-TRW, Hyundai, and Toyota investigated airbag non-deployments in several Toyota and Hyundai vehicles but failed to inform NHTSA that there was an issue until the end of 2015. Even after advising NHTSA in 2015, each of these companies downplayed the severity and frequency of these nondeployment crashes. It was not until February and June of 2018 that Hyundai and Toyota, respectively, issued product recalls as to a small segment of their vehicles.

Throughout this nearly decade long period, unsuspecting U.S. consumers purchased Class Vehicles (defined below) with defective ACUs which indisputably pose a grave safety risk.

4.      The defective ACUs create a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or personal injury. ZF-TRW, Hyundai, FCA and Toyota put profits ahead of safety by continuing to equip vehicles with ACUs year after year, even though they knew or should have known those ACUs were defective. Despite the number of airbag failures, injuries, and deaths caused by the ASIC Defect, ZF-TRW, Hyundai, FCA and Toyota were slow to fully investigate the problem and slow to report the danger to drivers and passengers of all ACU equipped vehicles. Only after several deaths, injuries, and investigations did Hyundai and Toyota choose to recall a fraction of their vehicles equipped with the ASIC Defect.

5.      As a result of this misconduct, Plaintiffs and members of the proposed Classes were harmed and suffered actual damages. Plaintiffs and the Classes did not receive the benefit of their bargain; rather, they purchased or leased vehicles that are of a lesser standard, grade, and quality than represented, and they did not receive vehicles that met ordinary and reasonable consumer expectations regarding safe and reliable operation. Purchasers or lessees of the Class Vehicles paid more, either through a higher purchase price or higher lease payments, than they would have had the ASIC Defect been disclosed. Plaintiffs and the Classes were deprived of having a safe, defect-free airbag installed in their vehicles, and ZF-TRW, Hyundai, and Toyota unjustly benefited from their unconscionable delay in recalling its defective products, as they avoided incurring the costs associated with recalls and installing replacement parts for years.

6.      Plaintiffs and the Classes also suffered damages in the form of out-of-pocket and loss-of-use expenses and costs.

7.    Plaintiffs and the Classes also suffered damages as a result of ZF-TRW, Hyundai, FCA and Toyota's concealment and suppression of the facts concerning the safety, quality, and reliability of Hyundai and Toyota vehicles with the defective ACUs. ZF-TRW, Hyundai, FCA and Toyota's false representations and omissions concerning the safety and reliability of those vehicles and their concealment of the known safety defects plaguing those vehicles and the Hyundai and Toyota brands caused Plaintiffs and Class members to purchase, lease, or retain Hyundai and Toyota vehicles of diminished value.

## JURISDICTION AND VENUE

8.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331,1961, 1962 and 1964, because Plaintiffs' RICO and Magnusson-Moss claims arise under federal law.

9.    This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Classes are citizens of states different from each Defendant's home state, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.  Further, greater than two-thirds of the members of the Class reside in states other than the states in which Defendants are a citizens.

10.    In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that Plaintiffs ordinarily would expect to try them in one judicial proceeding.

11.    This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.

**VENUE**

12.     Venue lies within this judicial district under 28 U.S.C. § 1391(b)(1) and (c)(2) because Plaintiff David Radi resides in this district and purchased his defective Hyundai vehicle in this district.   Furthermore, Defendants' contacts are sufficient to subject them to personal jurisdiction in this District, and therefore, Defendants reside in this District for purposes of venue, or under 28 U.S.C. § 1391(b)(2) because certain acts giving rise to the claims at issue in this Complaint occurred, among other places, in this District.

**THE PARTIES**

**I.   Defendants**

13.     Hyundai Motor America, Inc. ("HMA") is a Delaware corporation with its principal place of business located at 10550 Talbert Avenue, Fountain Valley, California. HMA is a citizen of the State of California.

14.     Kia Motor America, Inc. ("KMA") is a Delaware corporation with its principal place of business located at 111 Peters Canyon Road, Irvine, California. KMA is a citizen of the State of California.

15.     Defendant Toyota Motor Sales, U.S.A., (TMS) Inc. is a corporation organized under the laws of the State of Kentucky and headquartered in at 1001 Cherry Blossom Way, Georgetown, KY 40324.   Toyota Motor Sales, U.S.A., Inc. is the U.S. sales, marketing, and distribution arm of its Japanese parent company, Defendant Toyota Motor Corporation, and oversees both the Toyota and Lexus vehicle divisions in the United States. All decisions regarding the conduct of the affairs of the Toyota Motor Corporation in the United States are made out of Toyota's headquarters in Georgetown, Kentucky.

16.     Toyota Motor Corporation is the Japanese Parent Company of Toyota Motor Sales, U.S.A.

17.     Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Corporation shall be collectively referred to as "Toyota."

18.     Defendant FCA US LLC ("FCA") is a for-profit limited liability company organized under the laws of the State of Delaware, and maintains its headquarters and principal place of business at 1000 Chrysler Drive, Auburn Hills, Michigan. FCA US LLC is also registered with the State of New York as a foreign limited liability company. FCA US LLC is wholly owned by Fiat Chrysler Automobiles N.V., a Dutch corporation headquartered in London, England.

19.     ZF TRW Automotive Holdings Corp. ("ZF-TRW"), is a Delaware corporation with its principal place of business located at 12001 Tech Center Drive, Livonia, Michigan and ZF is a citizen of the States of Delaware and Michigan. ZF-TRW was formed as of May 15, 2015 when ZF Friedrichshafen AG acquired TRW Automotive Holdings Corp. All references to ZF-TRW include the actions of TRW Automotive Holdings Corp. prior to the acquisition.

## II. Plaintiffs

### a. New York Plaintiff

20.     Plaintiff David Radi resides in Astoria, New York.     He owns a 2013 Hyundai Sonata, which he purchased new in 2013.  To Plaintiff's knowledge, the airbags in her vehicle have not been repaired or replaced.  The value of Plaintiff's 2013 Hyundai Sonata has been diminished as a result of the ASIC defect.  If Plaintiff had known about the ASIC defect, Plaintiff would not have purchased his 2013 Hyundai Sonata, or paid as much as he did for it.

**b.  Georgia Plaintiff**

21.     Plaintiff CURLINE REGISTE resides in Lawrenceville, GA. She owns a 2015 Chrysler 200, which she purchased new in 2015.  To Plaintiff's knowledge, the airbags in her vehicle have not been repaired or replaced. The value of Plaintiff's 2015 Chrysler 200 has been diminished as a result of the ASIC Defect. If Plaintiff had known about the ASIC Defect, Plaintiff would not have purchased her 2015 Chrysler 200, or would not have paid as much as she did for it.

**c.  Pennsylvania Plaintiff**

22.     Plaintiff YAMIRA COLLAZO resides in Allentown, PA. She owns a 2018 Toyota Camry which she purchased new in 2018.  To Plaintiff's knowledge, the airbags in her vehicle have not been repaired or replaced. The value of Plaintiff's 2018 Toyota Camry has been diminished as a result of the ASIC Defect. If Plaintiff had known about the ASIC Defect, Plaintiff would not have purchased her 2018 Toyota Camry, or would not have paid as much as she did for it.

## GENERAL FACTUAL ALLEGATIONS

**I.  Definitions**

23.     Plaintiffs bring this action on behalf of themselves and all persons similarly situated who purchased or leased Class Vehicles (defined below). Plaintiffs seek redress individually and on behalf of those similarly situated for economic losses stemming from ZF-TRW, TMS, HMK, FCA and KMA's manufacture, sale or lease, and false representations concerning the defective airbags in the Class Vehicles, including but not limited to diminished value. Plaintiffs, on behalf of themselves and those similarly situated, seek to recover damages, statutory penalties, and injunctive relief/equitable relief.

24.    "Class Vehicles" refers to the: (a) Kia Forte 2013; (b) Kia Forte Koup 2013; (c) Kia Optima 2013-2019; (d) Kia Optima Hybrid 2012-2016; (e) Kia Sedona 2014; (f) Hyundai Sonata 2013-2019; (g) Hyundai Sonata Hybrid 2013-2019; (h) Chrysler 200 2015; (i) Toyota Camry 2011-2019.

25.    ."Defective ACUs" refers to all airbag control units designed and manufactured by ZF-TRW that include ASICs that are susceptible to electrical overstress (the "ASIC Defect"), including all ZF-TRW ACUs that were installed in the Class Vehicles.

26.    "FCA-Hyundai-Kia-Toyota Defendants" refers collectively to defendants FCA, HMA and KMA.

27.    "FCA-Hyundai-Kia-Toyota Entities" refers to all the below listed companies that participated in the conduct for which Plaintiffs are bringing this action including the FCA-Hyundai-Kia-Toyota Defendants and Hyundai MOBIS Co. Ltd. ("MOBIS"), a foreign limited liability company under the laws of South Korea that is a parts supplier for the Kia and Hyundai family of companies.

## II. **The ACU and ASIC Defect**

28.    The part of the airbag at issue in this matter is the ASIC that triggers airbag deployment.  The FCA-Hyundai-Kia-Toyota-Toyota Defendants equipped each of the Class Vehicles with an Advanced Airbag System as well as an airbag control unit ("ACU"). The ACU was designed and manufactured by ZF-TRW. The ACU is designed to detect when a crash will occur and deploys the airbag to prevent injury to the driver and passengers of the vehicle. A crucial component of this crash detection system is an application-specific integrated circuit ("ASIC").1 When the ASIC is functioning properly, the ACU will detect the severity of a crash, deploy the airbags if necessary, and engage the seatbelt pretensioners.

29.     The ASIC in the Class Vehicles' ACUs are defective because they are susceptible to electrical overstress ("EOS") which allows excess electrical signals produced during the crash to overload the ASIC and prevent the deployment of the airbag and the seat belt pretensioners.

30.     A failure of the ASIC due to EOS greatly increases the risk of injury to the vehicle occupants during a crash. According to media reports, there were six crashes in Hyundai and Kia vehicles as of March 2018 where the ASIC of the ACU was overstressed.2 From these accidents, four people were killed and six others were injured.

31.     In 2016, Fiat Chrysler Automobiles ("FCA") issued a recall of over 1.4 million vehicles due to this defect.

32.     After NHTSA began investigating other car manufacturers for similar non-deployments due to the ZF-TRW ACU, it was revealed that both Kia and Hyundai brand cars from model years 2011 through 2013 were plagued by this same defect. In February of 2018, Hyundai issued an initial recall for 150,000 vehicles due to the above defect, but in October of 2018 increased the number of vehicles recalled to 581,000. In August of 2018, Kia issued a recall for 507,000 vehicles due to the same defect.

33.     On April 19, 2019, NHTSA issued a statement that the Office of Defects Investigation had decided to expand its investigation into the ASIC Defect, which includes an estimated 12.3 million vehicles. The 2018 recalls by the FCA-Hyundai-Kia-Toyota-Toyota Defendants were not sufficient to protect consumers from the dangers of the defective ACU.4

34.     The FCA-FCA-Hyundai-Kia-Toyota-Toyota Defendants and ZF-TRW knew and had reason to know of this defect well before the issuance of any recalls in 2018 but concealed this defect from the public. Defendants worked in concert to delay the reporting of this defect to consumers and to regulators to protect each Defendant's financial interests. Further, the

Defendants acted to conceal the depth of this problem and the number of incidents that occurred worldwide. Only after multiple years, accidents, deaths, and formal investigations did the Defendants begin to act to correct a problem that should never have occurred.

### III. Defendants Knew of the ACU Defect Years before Instituting a Partial Recall

35.     As early as August of 2011, the Defendants knew of the problems with the ASIC but chose to cover up these facts. There was a motor vehicle crash in  China involving a Kia Forte where the airbags did not deploy. MOBIS requested that ZF-TRW analyze the crash data to determine why there was no deployment. ZF-TRW observed that there was damage to the ASIC that was "consistent with EOS."5 Instead of investigating the matter further, the FCA-Hyundai-Kia-Toyota-Toyota  Motor Company ("HKMC") "communicat[ed] its assessment that the incident was a commanded nondeployment"6 and considered the matter closed.

36.     Despite HKMC's attempts to sweep the defects under the rug, Defendants became aware of several other non-deployment incidents. In February  2012, HMA was notified of a collision involving a 2011 Hyundai Sonata in which the airbag failed to deploy. The investigation revealed that the ASIC failed due to EOS.  However, HMA  concluded  that  the problem  was  due  to  "numerous aftermarket accessories installed in the vehicle" and was not related to any prior non-deployment accidents.7

37.     In March of 2012, MOBIS again referred a post-crash analysis to ZF-TRW related to failed airbag deployment—this time for a crash involving a Kia Forte in Egypt. Once again, ZF-TRW found that the ASIC damage was "consistent with  EOS," and once  again HKMC  "communicat[ed]  its  assessment  that  the  incident  was  a  commanded nondeployment."8 After this analysis in May of 2012, ZF-TRW communicated directly with HKMC and MOBIS "about the investigation of field events observed with EOS."9 As of 2012,

nothing was reported publicly about the danger of EOS of ASICs in the ACUs manufactured and installed in the Class Vehicles.

38.    As late as May of 2013, ZF-TRW documented a "potential warranty concern" related to the ACU ASIC. 10 This document was circulated to vehicle manufacturers, including under information and belief the FCA-Hyundai-Kia-Toyota-Toyota  Entities. This document described a potential condition of the ASIC that resulted in an intermittent power connection, which may cause EOS damage to the ASIC. This document also recommended countermeasures to prevent such damage.

39.    In March of 2014, KMA received notice of a lawsuit complaint alleging non- deployment of an airbag in a 2012 Kia Forte. Approximately one year later in March of 2015, KMA began to examine the airbag and determine the cause for the failure to deploy.

40.    It is important to note that during the time period where the Defendants were first learning about the defect with the ASICs, Hyundai was being investigated by NHTSA for improperly delaying a recall of Genesis cars to fix a brake defect. In 2014, Hyundai agreed to settle the matter, and NHTSA stated that Hyundai "must change the way they deal with safety-related defects." In 2016, a whistleblower within of one of the FCA-Hyundai-Kia-Toyota-Toyota Defendants also reported concerns to NHTSA about the scope and timeliness of three recalls carried out in the U.S.

41.    In February of 2015, HMA requested that ZF-TRW review data from another crash in which the airbags in a Hyundai Sonata did not deploy.18 ZF-TRW did not analyze these results until April of 2016.19 Once again, ZF-TRW found that the  ASIC   damage   was "consistent  with  EOS," and  once  again  HKMC "communicat[ed]  its  assessment that the  incident  was  a  commanded nondeployment."

42.    In May of 2015, HMA was notified of a collision involving yet another 2011 Sonata where the airbags failed to deploy. HMA did not inspect the vehicle or the ACU until October of 2015, and also requested assistance from ZF-TRW. ZF- TRW's analysis indicated that internal damage to the ASIC due to EOS.21 NHTSA investigation into the ACU ASIC Defect began at some point during the summer of 2015.

43.    While the Defendants were investigating several airbag non-deployment crashes in 2015 and 2016, ZF-TRW was also performing an in depth analysis of several crashes related to FCA's investigation into the ASIC Defect. ZF-TRW was heavily involved in FCA's investigation into 11 crashes involving airbag non-deployment. As early as June of 2015, ZF-TRW proposed that the EOS failures of the ASIC could be due to excess electrical charge generated during the crash, which was a critical development in the investigation. Despite this knowledge, ZF-TRW refused to connect the EOS problems in the Hyundai and Kia vehicle to the defect discovered in the FCA investigation until February of 2018.

44.    From June 2015 through January of 2016, KMA and the Kia Motor Company ("KMC") attempted to determine the cause of two non-deployments in Kia Forte vehicles. KMA, KMC, MOBIS, and ZF-TRW performed inspections and analyses of these vehicles and incidents. ZF-TRW analyzed the data in early December of 2015 and found that in both vehicles' ACUs, the ASICs were damaged by EOS. Once again HKMC stepped in and "communicat[ed] its assessment that one of the incidents was a commanded nondeployment and the other [was] under investigation." HMKC, MOBIS, and ZF-TRW also begin to engage in regular meetings to discuss how they would handle the NHTSA investigation and non- deployments.  On February 5, 2016, ZF-TRW held a voluntary meeting with NHTSA to discuss the ACU investigation and the number of incidents involving non deployed airbags across multiple manufacturers.

Twenty days later, ZF-TRW met with HKMC and MOBIS to discuss ZF-TRW's meeting with NHTSA and the "incidents involving nondeployments with observed EOS." In May of 2016, ZF-TRW met with HKMC and MOBIS in person again to discuss the investigation. On July 19, 2016, ZF-TRW attended another meeting with the NHSTA, and 20 days later attended another in person meeting with HKMC and MOBIS to discuss the NHTSA meeting. In July and August of 2016, ZF-TRW informed HKMC that that discussions with NHTSA and FCA did not require a recall by the FCA-Hyundai-Kia-Toyota-Toyota Defendants.

45.     On information and belief, Defendants engaged in discussions to delay and otherwise diffuse the NHTSA investigation into the FCA-Hyundai-Kia-Toyota-Toyota Defendants' actions. Despite knowledge of approximately ten crashes around the world involving Hyundai or Kia vehicles with EOS damage to the ASICs of the ACUs, Defendants worked together to obstruct the NHTSA investigation and to delay any recall as far into the future as possible. On information and belief, the FCA-Hyundai-Kia-Toyota-Toyota Defendants repeatedly misrepresented the cause of airbag non-deployment in many crashes, or concealed the true causes, so that it appeared the ASIC Defect did not occur in Hyundai and Kia vehicles.

46.     Between July and November of 2016, HMA received reports of two additional 2011 Sonata crashes where airbag non-deployments were observed.34 HMA referred the ACUs for review to ZF-TRW. ZF-TRW downloaded the data in November of 2016 and February of 2017.35 In August of 2016, KMA requested that ZF-TRW download and review ACU data for another Kia Forte crash involving the non-deploying of an airbag. In March of 2017, MOBIS requested an analysis for another crash involving a Kia Forte in China where the airbag did not deploy.

47.    In August of 2017, ZF-TRW analyzed the data from two of the Hyundai Sonata crashes and one of the Kia Forte crashes.3n all three crashes, ZF-TRW observed damage to the ASICs that is consistent with EOS. HKMC then communicated its usual message "that all three incidents were commanded nondeployments."

48.    On February 27, 2018, HMA issued the voluntary recall of all 2011 model year Sonatas due to the ASIC Defect. Then on June 1, 2018, KMA agreed to voluntarily recall all 2010 through 2013 model year Fortes and Forte Koups, all 2011 through 2013 model year Optimas, Opitma Hybrids, and all 2011 through 2012 model year Sedonas. Finally, in October of 2018, HMA expanded its recall to all 2011 through 2013 model year Sonatas, and all 2011 through 2012 Sonata Hybrids.

## IV. Defendants' Misrepresentation and Omissions to the Public and NHTSA

49.    At all relevant times, in advertisements and promotional materials, the FCA-Hyundai-Kia-Toyota-Toyota Defendants continuously maintained that Hyundai and Kia-branded vehicles were safe and reliable and uniformly concealed the ASIC Defect. Plaintiffs, directly or indirectly, were exposed to these advertisements or promotional materials prior to purchasing or leasing Class Vehicles. The misleading statements about Class Vehicles' safety in the FCA-Hyundai-Kia-Toyota-Toyota Defendants' advertisements and promotional materials were material to decisions to purchase or lease Class Vehicles.

50.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants all advertise their vehicles as safe and reliable vehicles with safety as one of their top priorities. Hyundai makes the following claims on its advertising website:



51.     Kia goes even further to make explicit safety claims as to its airbag systems:



52.     Defendants also made misrepresentations to the public, through NHTSA, when reporting incidents to NHTSA. On information and belief, the FCA-Hyundai-Kia-Toyota-Toyota Defendants purposefully omitted the reports of airbag non-deployment crashes outside of North America where it was found that the ASIC was damages by EOS.

53.     FCA states the following regarding its airbags:





54.     Defendants also misrepresented the results of their investigations. In eight

separate crashes involving non-deployments, ZF-TRW concluded eight times that the damage to

the ASICs were consistent with EOS and in each of those eight crashes the FCA-Hyundai-Kia-Toyota-Toyota Defendants concluded that the failure to deploy the airbag was either inconclusive or was the result of a "commanded nondeployment." As a result, the Defendants represented, to NHTSA and the public that the incidents of EOS damage to the ASIC were much less frequent than what actually occurred.

## TOLLING OF THE STATUTE OF LIMITATIONS

### I. <u>Fraudulent Concealment</u>

55. Defendants have known of the ASIC Defect since at least August 2011, when they first learned that airbag non-deployments were caused by the ASIC Defect as a result of EOS. Defendants obtained further knowledge of the ASIC Defect after August 2011, when they learned of the results of additional field incidents involving the Defective ACUs, and recalls by other automakers. Defendants have concealed from, or failed to notify, Plaintiffs, Class members, and the general public of the full and complete nature of the ASIC Defect.

56. Although the FCA-Hyundai-Kia-Toyota-Toyota Defendants acknowledged in 2018 to safety regulators that some of the ACUs were defective, for years, the FCA-Hyundai-Kia-Toyota-Toyota Defendants did not fully investigate or disclose the seriousness of the issue and in fact concealed and downplayed the widespread prevalence of the problem. To this day ZF-TRW has refused to acknowledge that their product is defective or initiate a recall of its Defective ACUs.

57. Any applicable statute of limitations has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

## II.    Estoppel

58.    Defendants were, and are, under a continuous duty to disclose to Plaintiffs and proposed Class members the true character, quality, and nature of the Class Vehicles. They actively concealed the true character, quality, and nature of the vehicles, and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the vehicles. Plaintiffs and proposed Class members reasonably relied upon Defendants' knowing, and affirmative misrepresentations and/or active concealment of these facts. Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## III.    Discovery Rule

59.    The causes of action alleged here did not accrue until Plaintiffs and proposed Class members discovered that their vehicles had the Defective ACUs.

60.    Plaintiffs and proposed Class members, however, had no realistic ability to discern that their vehicles were defective, until after either the Defective ACUs failed, or their vehicles were recalled. Even then, Plaintiffs and proposed Class members would have had no reason to discover their causes of action, because of Defendants' active concealment of the true nature of the defect.

## CLASS ACTION ALLEGATIONS

61.    The proposed Classes' claims all derive directly from a single course of conduct by Defendants. This case is about the responsibility of Defendants, at law and in equity, for their knowledge, conduct, and products. Defendants have engaged in uniform and standardized conduct toward the proposed Classes. They did not differentiate, in degree of care or candor, in their actions or inactions, or in the content of its statements or omissions, among individual Class members. The objective facts on these subjects are the same for all Class members. Within each

Claim for Relief asserted by the respective proposed Classes, the same legal standards govern. Additionally, many—and for some, all—states share the same legal standards and elements of proof, facilitating the certification of multistate or nationwide classes for some or all claims. Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf, and on behalf of all other persons similarly situated, as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

## I.     **The Class**

62.     Plaintiffs bring this action, and seek to certify and maintain it as a class action, under Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or c(4), on behalf of themselves, and a Nationwide Consumer Class defined as follows:

- **Class:** All persons in the United States who purchased or leased a Class Vehicle.

- **New York Subclass:**   All members of the class who purchases or leased a class vehicle in New York

- **Georgia Subclass:**   All members of the class who purchases or leased a class vehicle in Georgia

- **Pennsylvania Subclass:**   All members of the class who purchases or leased a class vehicle in Pennsylvania

63.     Excluded from each Class are ZF-TRW, and the FCA-Hyundai-Kia-Toyota-Toyota Defendants; their employees, officers, directors, legal representatives, heirs, and successors; wholly or partly owned subsidiaries or affiliates of Defendants; Class Counsel and

their employees; and the judicial officers, their immediate family members, and associated court staff assigned to this case.

## II.    <u>Numerosity</u>

64.    This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(1). There are millions of Class Vehicles nationwide. Individual joinder of all Class members is impracticable.

65.    Each of the Classes are ascertainable because their members can be readily identified using vehicle registration records, sales records, production records, and other information kept by Defendants or third parties in the usual course of business and within their control. Plaintiffs anticipate providing appropriate notice to the Class in compliance with Federal Rules of Civil Procedure 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Rule 23(d).

## V.    <u>Predominance of Common Issues</u>

66.    This action satisfies the requirements of Federal Rules of Civil Procedure 23(a)(2) and (b)(3), because questions of law and fact that have common answer and predominate over questions affecting only individual Class members. These include, without limitation, the following:

   a.   Whether the Class Vehicles suffer from the ASIC Defect;

   b.   Whether Defendants knew, or should have known, about the ASIC Defect, and, if so, how long Defendants have known of the defect;

   c.   Whether Defendants had a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class members;

d.  Whether Defendants omitted and failed to disclose material facts about the Class Vehicles;

e.  Whether Defendants' concealment of the true defective nature of the Class Vehicles induced Plaintiffs and Class members to act to their detriment by purchasing the Class Vehicles;

f.  Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

g.  Whether Defendants misrepresented that the Class Vehicles were safe;

h.  Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices, in trade or commerce, by failing to disclose that the Class Vehicles were designed, manufactured, and sold with defective airbag components;

i.  Whether Defendants' conduct, as alleged herein, was likely to mislead a reasonable consumer;

j.  Whether Defendants' statements, concealments, and omissions regarding the Class Vehicles, were material, in that a reasonable consumer could consider them important in purchasing, selling, maintaining, or operating such vehicles;

k.  Whether Defendants violated State consumer protection statutes, and if so, what remedies are available under those statutes;

l.  Whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

m.  Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiffs and the Classes;

n.   Whether the Class Vehicles have suffered a diminution of value as a result of those Vehicles' incorporation of the airbags at issue;

o.   Whether Defendants have been unjustly enriched by its conduct;

p.   Whether Defendants should be declared responsible for notifying all Class members of the ASIC Defect, and ensuring that all vehicles with the airbag ASIC Defect are promptly recalled and repaired;

q.   Whether Defendants conspired with others to violate RICO; and

r.   Whether Defendants associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

s.   Whether Defendants breached its express and/or implied contractual obligations to Plaintiff and members of the Class and the New York, Georgia and Pennsylvania Subclasses;

t.   Whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.;

u.   Whether Defendants' conduct as described herein breached its express or implied warranties to Plaintiff and the members of the Class and the New York, Georgia and Pennsylvania Subclasses;

v.   Whether Defendants' conduct as described herein was deceptive and/or misleading, including whether FCA negligently misrepresented or omitted material facts, including the fact that the ZF-TRW airbag installed in the Class Vehicles is defective and/or presents a safety risk;

24

w.  Whether Defendants' made material misrepresentations and/or omissions concerning the standard, quality, or grade of the Class Vehicles and the ZF-TRW airbag;

x.  Whether Defendants' conduct as described herein violated New York GBL § 349 et seq.;

y.  Whether Defendants' conduct as described herein violated New York GBL § 350 et seq.;

z.   Whether Defendants' was unjustly enriched by the conduct described herein;

aa. Whether Plaintiff and the members of the Class and the New York, Georgia and Pennsylvania Subclasses are entitled to equitable relief, including, but not limited to, restitution or injunctive relief -- including a repair of the defectively designed ZF-TRW airbag; and

bb. Whether Plaintiff and the other members of the Class and the New York, Georgia and Pennsylvania Subclasses are entitled to damages and other monetary relief and, if so, in what amount.

## VI.    Typicality

67.    This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs' claims are typical of the claims of the Class members, and arise from the same course of conduct by Defendants. The representative Plaintiffs, like all prospective class members, have been damaged by Defendant's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective airbags. The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

**VII.**     **Adequate Representation**

68.     Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective products.

69.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Classes.

**IV.**     **Superiority**

70.     This action satisfies the requirements of Federal Rule of Civil Procedure 23(b)(2), because Defendants have acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final relief with respect to each Class as a whole.

71.     This action satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3), because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The common questions of law and fact regarding Defendants' conduct and responsibility predominate over any questions affecting only individual Class members.

72.     Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions; and the burden imposed on the judicial system by individual litigation—by even a small fraction of the Class—would be enormous, making class adjudication the superior alternative under Federal Rule of Civil Procedure 23(b)(3)(A).

73.    The conduct of this action as a class action presents far fewer management difficulties; far better conserves judicial resources, and the parties' resources; and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Federal Rule of Civil Procedure 23(b)(3)(D).

74.    Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Federal Rule of Civil Procedure 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism, and reduce management challenges. The Court may, on motion of Plaintiffs, or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law, for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

75.    The Classes expressly disclaim any recovery in this action for physical injury resulting from the ASIC Defect without waiving or dismissing such claims. Plaintiffs are informed and believe that injuries suffered in crashes as a result of Defective ACUs implicate the Class Vehicles; constitute evidence supporting various claims, including diminution of value; and are continuing to occur because of Defendants' delays and inaction regarding the

commencement and completion of recalls. The increased risk of injury from the ASIC Defect serves as an independent justification for the relief sought by Plaintiffs and the Classes.

## REALLEGATION AND INCORPORATION BY REFERENCE

76.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs and allegations of this Complaint, including the Nature of Claims, Factual Allegations, Tolling Allegations, and Class Action Allegations, as though fully set forth in each of the following Claims for Relief asserted on behalf of the Nationwide Class and the Statewide Classes.

## CLAIMS FOR RELIEF

### I.     FEDERAL CLAIMS

#### Count One
#### Violation of the Racketeer Influenced and Corrupt Organizations Act
#### 18 U.S.C. § 1962(c)

77.     Plaintiffs bring this claim on behalf of themselves, and the members of the proposed Nationwide Class and proposed subclasses, against all Defendants, with regard to the defective ACUs that the Defendants manufactured, sold, or misrepresented as safe.

78.     The FCA-Hyundai-Kia-Toyota-Toyota Defendants, ZF-TRW, and MOBIS are all "persons" under 18 U.S.C. § 1961(3).

79.     Plaintiffs and Class members are "person[s] injured in his or her business or property" by reason of the FCA-Hyundai-Kia-Toyota-Toyota Defendants' and ZF-TRW's violation of RICO within the meaning of 18 U.S.C. § 1964(c).

80.     Since the first reports of the ASIC Defect in 2011, ZF-TRW and the FCA-Hyundai-Kia-Toyota-Toyota Defendants shared information about airbag non-deployments, jointly and secretly; investigated the possible causes of those failed deployments; delayed and/or prevented the release of inculpatory information; misled regulatory authorities; and maintained a

consistent public posture as to the scope of vehicles affected by the Defective ACUs, and the safety risks those airbags posed. The FCA-Hyundai-Kia-Toyota-Toyota Defendants' close cooperation with ZF-TRW on issues surrounding the ASIC Defect, and joint participation in predicate acts described below, evidence not only the formation of a common purpose to conduct the Defective ACU RICO Enterprise through a pattern of racketeering activity, but also a conspiracy to participate in a RICO enterprise by conducting the affairs of such an enterprise through a pattern of racketeering activity.

### i. *The Defective ACU RICO Enterprise*

81.     The following persons, and others currently unknown, are or have been members of, and constitute an "association-in-fact enterprise," within the meaning of RICO, and will be referred to herein collectively as the Defective ACU RICO Enterprise:

(a) ZF-TRW, who, designed and manufactured the Defective ACUs and provided services to the FCA-Hyundai-Kia-Toyota-Toyota Defendants and MOBIS in the event of post-crash investigations. ZF-TRW knew that the ACUs contained the dangerous ASIC Defect, the scope and nature of which they concealed from and misrepresented to the public and regulators for close to a decade and still refuse to entirely acknowledge.

(b) MOBIS, who, with ZF-TRW's guidance, supplied millions of Defective ACUs knowing that they contained the ASIC Defect, the scope and nature of which they concealed from and misrepresented to the public and regulators for close to a decade and still refuse to entirely acknowledge.

(c) The FCA-Hyundai-Kia-Toyota-Toyota Defendants, who designed, manufactured, and sold millions of vehicles equipped with Defective ACUs that it knew, or were reckless in not knowing, contained the ASIC Defect, the scope and nature of which they concealed from and

misrepresented to the public and regulators since August of 2011, while falsely and inaccurately representing that their vehicles were safe, thereby deceiving Plaintiffs and Class members.

82.    The Defective ACU RICO Enterprise, which engaged in, and whose activities affected interstate and foreign commerce, includes individuals and corporate entities associated in fact within the meaning of 18 U.S.C. § 1961(4) and consists of "persons" associated together for a common purpose. The Defective ACU RICO Enterprise had an ongoing organization with an ascertainable structure and functioned as a continuing unit with separate roles and responsibilities.

83.    At all relevant times, Defendants operated, controlled, or managed the Defective ACU RICO Enterprise through a variety of actions. The FCA-Hyundai-Kia-Toyota-Toyota Defendants' participation in the Defective ACU RICO Enterprise was necessary for the successful operation of its scheme to defraud, because the FCA-Hyundai-Kia-Toyota-Toyota Defendants manufactured, marketed, and sold Class Vehicles with the Defective ACUs; concealed the nature and scope of the ASIC Defect; and profited from such concealment. ZF-TRW's participation in the Defective ACU RICO Enterprise was necessary for the successful operation of the scheme to defraud, because ZF-TRW designed and provided support related to analysis of ACU data. Finally, MOBIS's participation in the scheme was necessary for the successful operation of the enterprise, because MOBIS supplied the Defective ACU components that were installed in the Class Vehicles.

84.    The members of the Defective ACU RICO Enterprise all served a common purpose: to maximize the revenue and profitability of its members by delaying the recall of the Defective ACUs and continuing to unlawfully sell unreasonably dangerous vehicles containing Defective ACUs.

85.    The members of the Defective ACU RICO Enterprise pursued their common purpose by engaging in a pattern of racketeering activity that included a common fraudulent scheme to increase sales by omitting information from the public regarding the defects in the airbags. Each member of the Defective ACU RICO Enterprise benefited from the common purpose and the common fraudulent scheme that supported it. Specifically, the FCA-Hyundai-Kia-Toyota-Toyota Defendants sold or leased more Class Vehicles and received more for those vehicles than they would have otherwise, had the scope and nature of the ASIC Defect not been concealed. Similarly, ZF-TRW and MOBIS sold more Defective ACUs to the FCA-Hyundai-Kia-Toyota-Toyota Defendants than they would have otherwise, had the scope and nature of the ASIC Defect not been concealed.

ii.    ***Pattern of Racketeering Activity***

86.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants, ZF-TRW, and MOBIS conducted and participated in the conduct of the affairs of the Defective ACU RICO Enterprise through a long-running pattern of racketeering activity, beginning August of 2011, and continuing to this day, consisting of numerous and repeated violations of the federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

87.    For Defendants, the purpose of the scheme to defraud was to conceal the scope and nature of the ASIC Defect found in millions of Defective ACUs in the United States in order to avoid incurring the expenses associated with repairing the ASIC Defect in vehicles that the FCA-Hyundai-Kia-Toyota-Toyota Defendants were obligated to recall. By concealing the scope and nature of the ASIC Defect in its millions of Defective ACUs, Defendants also maintained and boosted consumer confidence in the Hyundai and Kia brands and avoided remediation costs

and negative publicity, all of which furthered the scheme to defraud and helped the FCA-Hyundai-Kia-Toyota-Toyota Defendants, ZF-TRW, and MOBIS sell more vehicles and airbags than they otherwise would have sold and for a much higher price or profit.

88.    As detailed in the general factual allegations, Defendants were well aware of the risks of an EOS event damaging the ASIC during a crash event but intentionally subjected Plaintiffs and Class members to those risks, or consciously disregarded those risks, in order to maximize their profits. Moreover, even after the Defendants were aware of multiple airbag non-deployments in ZF-TRW ACUs installed in vehicles for which the FCA-Hyundai-Kia-Toyota-Toyota Defendants were responsible to recall, and vehicles with the ASIC Defect began maiming and killing vehicle occupants in other manufacturers' vehicles in the field, Defendants continued to conceal the nature and scope of the ASIC Defect from regulators and the public. This enabled Defendants to escape investigation and the costs associated with recalls.

89.    To further the scheme to defraud, the FCA-Hyundai-Kia-Toyota-Toyota Defendants conspired with ZF-TRW and MOBIS to, and did repeatedly, misrepresent and conceal the nature and scope of the ASIC Defect. As late as the end of 2017, Defendants refused to publicly acknowledge that a uniform defect existed in all vehicles with ACU components, when in fact Defendants knew that the ASIC Defect was a fundamental, uniform defect—i.e., the vulnerability of the ASIC during a crash event to EOS causing a failed deployment of the airbag and seatbelt pretensioners—that plagues every ZF-TRW ACU, and manifests itself across the country, and the world.

90.    To further the scheme to defraud, the FCA-Hyundai-Kia-Toyota-Toyota Defendants promoted and touted the safety, reliability, and quality of its vehicles, while simultaneously concealing the nature and scope of the ASIC Defect.

91.    To carry out or attempt to carry out the scheme to defraud Defendants have conducted or participated in the conduct of the affairs of the Defective ACU RICO Enterprise through the following pattern of racketeering activity that employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud):

(a) Defendants devised and furthered the scheme to defraud by use of the mail, telephone, and internet and transmitted or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, writing(s) and/or signal(s), including the FCA-Hyundai-Kia-Toyota-Toyota Defendants' websites, communications with NHTSA, statements to the press, and communications with other members of the Defective ACU RICO Enterprise, as well as advertisements and other communications to their customers, including Plaintiffs and Class members; and

(b) Defendants utilized the interstate and international mail and wires for the purpose of obtaining money or property, by means of the omissions, false pretense, and misrepresentations described herein.

92.    Since August of 2011, Defendants' pattern of racketeering activity in violation of the mail and wire fraud statutes included, but was not limited to, the following:

(a) From August of 2011 through at least 2017, Defendants repeatedly transmitted, or caused to be transmitted, by means of the mail and wire facilities travelling in interstate or foreign commerce, between the FCA-Hyundai-Kia-Toyota-Toyota Defendants in California and Kentucky, and ZF-TRW's facilities in Michigan, countless shipments of, and payments for, millions of ACUs. These regular, repeated shipments facilitated and furthered the scheme to defraud.

(b) Around August of 2011, Defendants transmitted or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, among the FCA-Hyundai-Kia-Toyota-Toyota Defendants in California and Kentucky, and ZF-TRW in Michigan, communications concerning an airbag non-deployment that occurred during a crash in China. ZF-TRW communicated that the damage to the ASIC was caused by EOS, but the FCA-Hyundai-Kia-Toyota-Toyota Defendants represented that incident was a "commanded nondeployment" and thus was not the result of a defect. The FCA-Hyundai-Kia-Toyota-Toyota Defendants failed to timely disclose these facts to the public and regulators in order to conceal the scope and nature of the ASIC Defect and to promote the purported safety of the FCA-Hyundai-Kia-Toyota-Toyota Defendants vehicles.

(c) Around March of 2012, Defendants transmitted or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, among the FCA-Hyundai-Kia-Toyota-Toyota Defendants in California and Kentucky, and ZF-TRW in Michigan, communications concerning an airbag non-deployment that occurred during a crash in Egypt. ZF-TRW communicated that the damage to the ASIC was caused by EOS, but the FCA-Hyundai-Kia-Toyota-Toyota Defendants represented that incident was a "commanded nondeployment" and thus was not the result of a defect. The FCA-Hyundai-Kia-Toyota Defendants failed to timely disclose these facts to the public and regulators in order to conceal the scope and nature of the ASIC Defect and to promote the purported safety of the FCA-Hyundai-Kia-Toyota Defendants vehicles.

(d) Around December 1 through December 3 of 2011, Defendants transmitted or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign

commerce, among the FCA-Hyundai-Kia-Toyota Defendants in California and Kentucky, and ZF-TRW in Michigan, communications concerning airbag non-deployment that occurred during two vehicle crashes. ZF-TRW communicated that the damage to both ASIC was caused by EOS, but the FCA-Hyundai-Kia-Toyota Defendants represented that one incident was a "commanded nondeployment" and the other was "under investigation." The FCA-Hyundai-Kia-Toyota Defendants failed to timely disclose these facts to the public and regulators in order to conceal the scope and nature of the ASIC Defect and to promote the purported safety of the FCA-Hyundai-Kia-Toyota Defendants vehicles.

(e) On April 25, 2016, Defendants transmitted or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, among the FCA-Hyundai-Kia-Toyota Defendants in California and Kentucky, and ZF-TRW in Michigan, communications concerning an airbag non-deployment that occurred during a crash. ZF-TRW communicated that the damage to the ASIC was caused by EOS, but the FCA-Hyundai-Kia-Toyota Defendants represented that incident was a "commanded nondeployment" and thus was not the result of a defect. The FCA-Hyundai-Kia-Toyota Defendants failed to timely disclose these facts to the public and regulators in order to conceal the scope and nature of the ASIC Defect and to promote the purported safety of the FCA-Hyundai-Kia-Toyota Defendants vehicles.

(f) Around August 24 and August 25 of 2016, Defendants transmitted or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, among the FCA-Hyundai-Kia-Toyota Defendants in California and Kentucky, and ZF-TRW in Michigan, communications concerning airbag non-deployment that

occurred during three vehicle crashes. ZF-TRW communicated that the damage to all three ASIC was caused by EOS, but the FCA-Hyundai-Kia-Toyota Defendants represented that all three incidents were "commanded nondeployments." The FCA-Hyundai-Kia-Toyota Defendants failed to timely disclose these facts to the public and regulators in order to conceal the scope and nature of the ASIC Defect and to promote the purported safety of the FCA-Hyundai-Kia-Toyota Defendants vehicles.

(g) Between 2011 and the end of 2017, ZF-TRW had knowledge that the FCA-Hyundai-Kia-Toyota Defendants were misrepresenting multiple airbag non-deployment crashes as "commanded nondeployments." However, ZF-TRW acting in its role as part of the Defective ACU RICO Enterprise did not report these misrepresentations to the public or state or federal regulators. ZF-TRW also failed to report its knowledge of the ASIC Defect to regulators and the public until many years after discovering the issues.

(h) Between and around January and July of 2016, Defendants caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from the FCA-Hyundai-Kia-Toyota Defendants in California and ZF-TRW in Michigan to the offices of federal regulators in Washington, D.C., misrepresentations and omissions regarding the ASIC Defect, including that the defect was not present in Hyundai and Kia brand vehicles. Defendants knew that these statements were false and that the defect was present in millions of its vehicles, and yet it did nothing to meaningfully notify the appropriate regulators or notify the Class.

(i) On or around April 18, 2018, the FCA-Hyundai-Kia-Toyota Defendants caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from the FCA-Hyundai-Kia-Toyota Defendants' offices in California and

Kentucky to the offices of federal regulators in Washington, D.C., misrepresentations and omissions regarding the ASIC Defect, including a chronology of events that omitted numerous airbag non-deployments of which the FCA-Hyundai-Kia-Toyota Defendants were aware, in order to conceal the scope and nature of the ASIC Defect and to promote the purported safety of the FCA-Hyundai-Kia-Toyota Defendants vehicles.

(j) On or around August 30, 2018, the FCA-Hyundai-Kia-Toyota Defendants caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from the FCA-Hyundai-Kia-Toyota Defendants' offices in California and Kentucky, to the offices of federal regulators in Washington, D.C., misrepresentations and omissions regarding the ASIC Defect, including a chronology of events that omitted numerous airbag non-deployments of which the FCA-Hyundai-Kia-Toyota-Toyota Defendants were aware, in order to conceal the scope and nature of the ASIC Defect and to promote the purported safety of the FCA-Hyundai-Kia-Toyota-Toyota Defendants vehicles.

93.    Defendants' conduct in furtherance of this scheme was intentional. Plaintiffs and Class members were directly harmed as a result of Defendants' intentional conduct. Plaintiffs, Class members, and federal regulators, among others, relied on Defendants' material misrepresentations and omissions.

94.    As described throughout this Complaint, on or after August of 2011, the FCA-Hyundai-Kia-Toyota-Toyota Defendants, MOBIS, and ZF-TRW conspired to or did engage in a pattern of related and continuous predicate acts. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of defrauding Plaintiffs and other Class members—and obtaining significant monies and revenues from them—while providing

vehicles with Defective ACUs worth significantly less than the purchase price paid. The predicate acts also had the same or similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

95.     The predicate acts all had the purpose of generating significant revenue and profits for Defendants at the expense of Plaintiffs and Class members. The predicate acts were committed or caused to be committed by Defendants through their participation in the Defective ACU RICO Enterprise and in furtherance of its fraudulent scheme and were interrelated in that they involved obtaining Plaintiffs' and Class members' funds and avoiding the expenses associated with remediating the ASIC Defect.

96.     By reason of and as a result of the conduct of Defendants, and in particular, its pattern of racketeering activity, Plaintiffs and Class members have been injured in their business and/or property in multiple ways, including but not limited to:

(a) overpayment for leased or purchased Class Vehicles, in that Plaintiffs paid for vehicles with safe airbag systems and obtained vehicles with anything but, and were deprived of the benefit of their bargain; and

(b) the values of the Class Vehicles have diminished, thus reducing their resale values.

97.     Defendants' violations of 18 U.S.C. § 1962(c) have directly and proximately caused injuries and damages to Plaintiffs and Class Members, and Plaintiffs and Class Members are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(a) and (c).

**Count Two**
**Violation of the Racketeer Influenced and Corrupt**
**Organizations Act18 U.S.C. § 1962(d)**

98.    Plaintiffs bring this Count against all ZF-TRW-FCA-Hyundai-Kia-Toyota-Toyota Defendants, on behalf of themselves and members of the proposed Nationwide Class and proposed subclasses.

99.    Plaintiffs re-allege and incorporate the allegations set forth above.

100.    At all relevant times, the FCA-Hyundai-Kia-Toyota-Toyota Defendants, MOBIS, and ZF-TRW were associated with the Defective ACU RICO Enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), that is, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the Defective ACU RICO Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). The FCA-Hyundai-Kia-Toyota-Toyota Defendants, MOBIS, and ZF-TRW also agreed to the objective of the conspiracy or to commit at least two racketeering predicate acts.

101.    Over the course of the past nine years, Defendants shared information about the Defective ACUs' inherent flaws, their inability to meet safety specifications, and abnormal airbag deployments experienced by other automakers; delayed and/or prevented the release of inculpatory information; and maintained a consistent public posture as to the scope of vehicles affected by the Defective ACUs and the safety risks those airbags posed. Defendants' close cooperation on issues surrounding the ASIC Defect and joint participation in predicate acts described below is evidence of the conspiracy.

102.    Defendants committed, and caused to be committed, a series of overt acts in furtherance of the conspiracy and to affect the objects thereof.

103.    More specifically, the following conduct and overt acts demonstrate the ongoing conspiracy between the FCA-Hyundai-Kia-Toyota-Toyota Defendants, MOBIS, and ZF-TRW:

39

(a) Defendants continued to encounter non-deployments in ZF-TRW ACUs installed in Hyundai and Kia branded vehicles, but agreed to continue representing their vehicles as safe.

(b) Defendants also agreed to act so as to prevent any recall of the Defective ACUs. The FCA-Hyundai-Kia-Toyota-Toyota Defendants did not commence an official recall for their vehicles until 2018. Even then, the FCA-Hyundai-Kia-Toyota-Toyota Defendants limited the scope of the recall to specific car model years. The FCA-Hyundai-Kia-Toyota-Toyota Defendants falsely claimed that the risks caused by the ASIC Defect was not present in any other models not recalled. The FCA-Hyundai-Kia-Toyota-Toyota Defendants also mischaracterized the ASIC Defect as occurring in a lower frequency than was known the Defendants. ZF-TRW and MOBIS to the date of filing this complaint have never issued a safety recall of the Defective ACU components.

104.     Defendants agreed to and did conduct and participate in the conduct of the Defective ACU RICO Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of defrauding Plaintiffs and Class members, as more fully described above.

105.     As a direct and proximate result of Defendants' conspiracy and violation of 18 U.S.C. § 1962(d), Plaintiffs and Class members have been injured in their business and/or property in multiple ways, including but not limited to:

(a) overpayment for leased or purchased Class Vehicles, in that Plaintiffs paid for vehicles with safe airbag systems and obtained vehicles with anything but, and have been deprived of the benefit of their bargain; and

(b) the Class Vehicles' values have diminished, thus reducing their resale values.

106.    Had Defendants been entirely forthcoming with NHTSA and with the public in a timely manner about the vast scope of the ASIC Defect and the grave risks it posed to countless vehicle occupants, as was its duty, Plaintiffs would not have suffered these harms. Defendants' conspiracy to commit mail fraud and/or wire fraud was reasonably calculated to deceive persons of ordinary prudence and comprehension and was committed with reckless indifference to the truth if not the outright intent to deceive.

107.    Plaintiffs and Class Members seek to hold the Defendants liable only for damages resulting from conduct of the FCA-Hyundai-Kia-Toyota-Toyota Defendants, MOBIS, ZF-TRW, their co-conspirators, and the Defective ACU RICO Enterprise that occurred on or after August of 2011.

108.    Defendants' conspiracy to violate 18 U.S.C. § 1962(c) was committed with the specific intent to defraud, thereby entitling Plaintiffs to treble damages under 18 U.S.C. § 1964(c).

109.    Defendants' violations of 18 U.S.C. § 1962(d) have directly and proximately caused injuries and damages to Plaintiffs and Class Members, and Plaintiffs and Class Members are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. §§ 1964(a) and 1964(c).

**Count Three**
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301**

110.    Plaintiffs bring this Count against all ZF-TRW-FCA-Hyundai-Kia-Toyota-Toyota Defendants, on behalf of themselves and members of the proposed Nationwide Class and proposed subclasses.

111.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

112.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

113.    Any efforts to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim or otherwise limit liability for the Class Vehicles is null and void.

114.    Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between the FCA-Hyundai-Kia-Toyota-Toyota Defendants on the one hand, and Plaintiffs and the other Class members, on the other.

115.    Any limitations on the warranties are substantively unconscionable. The FCA-Hyundai-Kia-Toyota-Toyota Defendants knew that the Class Vehicles were defective, and would continue to pose safety risks after the warranties purportedly expired. The FCA-Hyundai-Kia-Toyota-Toyota Defendants failed to disclose the ASIC Defect to Plaintiffs and the other Class members. Thus, the FCA-Hyundai-Kia-Toyota-Toyota Defendants' enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

116.    Plaintiffs and each of the other Class members have had sufficient direct dealings with Hyundai or its agents (dealerships) to establish privity of contract.

117.    Nonetheless, privity is not required here, because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between the FCA-Hyundai-Kia-Toyota-Toyota Defendants and their dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles, and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were

designed for, and intended to benefit, consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the ASIC Defect.

118. Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action, and are not required to give the FCA-Hyundai-Kia-Toyota-Toyota Defendants notice and an opportunity to cure, until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

119. Furthermore, affording the FCA-Hyundai-Kia-Toyota-Toyota Defendants an opportunity to cure their breach of written warranties would be unnecessary and futile here. At the time of sale or lease of each Class Vehicle, The FCA-Hyundai-Kia-Toyota-Toyota Defendants knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford The FCA-Hyundai-Kia-Toyota-Toyota Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

120. Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because the FCA-Hyundai-Kia-Toyota-Toyota Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their Defective Vehicles by retaining them.

121. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of

interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members, in connection with the commencement and prosecution of this action.

122.    Plaintiffs also request, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses, and costs they have incurred in attempting to rectify the ASIC Defect in their vehicles. Such expenses and losses will continue as Plaintiffs and Class members must take time off from work, pay for rental cars or other transportation arrangements, child care, and the myriad of expenses involved in going through the recall process.

123.    The right of Class members to recover these expenses as an equitable matter—to put them in the place they would have been but for the FCA-Hyundai-Kia-Toyota-Toyota Defendants' conduct—presents common questions of law. Equity and fairness requires the establishment by Court decree, and administration under Court supervision, of a program funded by the FCA-Hyundai-Kia-Toyota-Toyota Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

## II. <u>COMMON LAW CLAIMS</u>

### <u>Count Four</u>
### <u>Fraud</u>

124.    Plaintiffs bring this claim on behalf themselves and the members of the Nationwide Class under the common law of fraud, as there are no true conflicts (case-dispositive

differences) among various states' laws of fraud. In the alternative, Plaintiffs bring this claim under the laws of the states where Plaintiffs and Class Members purchased their Class Vehicles.

125.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants concealed and suppressed material facts regarding the Defective ACUs—most the fact that they were equipped with Defective ACUs which, among other things, fail to deploy airbags or seat belt pretensioners as a result of the ASIC's vulnerability to EOS.

126.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants took steps to ensure that its employees did not reveal the known safety ASIC Defect to regulators or consumers.

127.    On information and belief, the FCA-Hyundai-Kia-Toyota-Toyota Defendants still have not made full and adequate disclosure, continues to defraud Plaintiffs and the Class, and continue to conceal material information regarding the ASIC Defect that exists in the Class Vehicles.

128.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants had a duty to disclose the ASIC Defect because they:

(a) Had exclusive and/or far superior knowledge and access to the facts, and the FCA-Hyundai-Kia-Toyota-Toyota Defendants knew the facts were not known to or reasonably discoverable by Plaintiffs and the Class;

(b) Intentionally concealed the foregoing from Plaintiffs and Class Members; and

(c) Made incomplete representations about the safety and reliability of the Defective ACUs and, by extension, the Class Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

129.    These omitted and concealed facts were material because they would be relied on by a reasonable person purchasing, leasing, or retaining a new or used motor vehicle and because

they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and the Class. Whether a manufacturer's products are safe and reliable and whether that manufacturer stands behind its products are material concerns to a consumer. Plaintiffs and Class Members trusted the FCA-Hyundai-Kia-Toyota-Toyota Defendants not to sell or lease them vehicles that were defective or that violated federal law governing motor vehicle safety.

130.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants concealed and suppressed these material facts to falsely assure purchasers and consumers that its airbags were capable of performing safely, as represented by the FCA-Hyundai-Kia-Toyota-Toyota Defendants and reasonably expected by consumers.

131.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants also misrepresented the safety and reliability of their vehicles, because they either (a) knew but did not disclose the ASIC Defect; (b) knew that they did not know whether their safety and reliability representations were true or false; or (c) should have known that their misrepresentations were false.

132.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants and actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and to avoid recalls that would hurt each brand's image and cost the FCA-Hyundai-Kia-Toyota-Toyota Defendants money. The FCA-Hyundai-Kia-Toyota-Toyota Defendants and ZF-TRW concealed these facts at the expense of Plaintiffs and the Class.

133.    Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed or suppressed facts.

134.    Had they been aware of the Defective ACUs and the FCA-Hyundai-Kia-Toyota-Toyota Defendants and callous disregard for safety, Plaintiffs and the Class either would not have paid as much for their Class Vehicles or would not have purchased or leased them at all.

135.    Plaintiffs did not receive the benefit of their bargain as a result of the FCA-Hyundai-Kia-Toyota-Toyota Defendants' fraudulent conduct.

136.    Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they own vehicles that diminished in value as a result of the FCA-Hyundai-Kia-Toyota-Toyota Defendants' concealment of, failure to timely disclose, and/or misrepresentations concerning the serious ASIC Defect in millions of Class Vehicles and the serious safety and quality issues caused by the FCA-Hyundai-Kia-Toyota-Toyota Defendants' conduct.

137.    The value of all Class members' vehicles has diminished as a result of the FCA-Hyundai-Kia-Toyota-Toyota Defendants' fraudulent conduct in connection with the Defective ACUs and made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

138.    Accordingly, the FCA-Hyundai-Kia-Toyota-Toyota Defendants are liable to the Class for their damages in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain or overpayment for the Class Vehicles at the time of purchase, the diminished value of the Defective ACUs and the Class Vehicles, and/or the costs incurred in storing, maintaining or otherwise disposing of the Defective ACUs.

139.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being and with the aim of enriching the FCA-Hyundai-Kia-Toyota-Toyota Defendants. The FCA-Hyundai-Kia-Toyota-Toyota Defendants' conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and effecting public safety, warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## Count Five
## Unjust Enrichment

140. Plaintiffs bring this claim on behalf of themselves and the members of the Nationwide Class under the common law of unjust enrichment, as there are no true conflicts (case-dispositive differences) among various states' laws of unjust enrichment. In the alternative, Plaintiffs bring this claim under the laws of the states where Plaintiffs and Class Members reside and/or purchased their Class Vehicles.

141. The FCA-Hyundai-Kia-Toyota-Toyota Defendants have received and retained a benefit from the Plaintiffs and inequity has resulted.

142. The FCA-Hyundai-Kia-Toyota-Toyota Defendants benefitted through their unjust conduct, by selling Class Vehicles with a concealed safety-and-reliability related defect, at a profit for more than these Vehicles were worth to Plaintiffs, who overpaid for these Vehicles, and/or would not have purchased these Vehicles at all; and who have been forced to pay other costs.

143. It is inequitable for the FCA-Hyundai-Kia-Toyota-Toyota Defendants to retain these benefits.

144. Consumer Plaintiffs do not have an adequate remedy at law

145. As a result of the FCA-Hyundai-Kia-Toyota-Toyota Defendants' conduct, the amount of its unjust enrichment should be disgorged in an amount to be proven at trial.

## III. NEW YORK STATUTORY CLAIMS

## COUNT SIX
## Unfair and Deceptive Business Practices N.Y. GEN. BUS. L. § 349

48

146.     Plaintiffs re-allege and incorporate the allegations elsewhere in the Complaint as if fully set forth herein.

147.     Plaintiffs bring this claim on behalf of the members of the Nationwide Class and the New York Subclass.

148.     FCA-Hyundai-Kia-Toyota-Toyota Defendants' conduct constitutes deceptive acts or practices or false advertising in the conduct of business, trade or commerce or on the furnishing of services in New York which affects the public interest under N.Y. Gen. Bus. L. § 349.

149. As alleged herein, by advertising, marketing, distributing, and selling the Automotive  Products to plaintiffs and other class members with false or misleading claims and representations, FCA-Hyundai-Kia-Toyota-Toyota Defendants engaged in, and continues to engage in, deceptive acts and practices.

150. As alleged herein, by misbranding the recall products, FCA-Hyundai-Kia-Toyota-Toyota Defendants engaged in, and continues to engage in, deceptive acts and practices.

151. FCA-Hyundai-Kia-Toyota-Toyota Defendants conduct was materially misleading to plaintiffs and the class.

152. During the class period, FCA-Hyundai-Kia-Toyota-Toyota Defendants carried out a plan, scheme and course of conduct which was consumer oriented.

153. As a direct and proximate result of FCA-Hyundai-Kia-Toyota-Toyota Defendants' violation of N.Y. Gen. Bus. L. § 349, plaintiffs and the class were injured and suffered damages. The injuries to plaintiffs and the class were foreseeable to FCA-Hyundai-Kia-Toyota-Toyota Defendants and, thus FCA-Hyundai-Kia-Toyota-Toyota Defendants' actions were unconscionable and unreasonable.

154. FCA-Hyundai-Kia-Toyota-Toyota Defendants is liable for damages sustained by plaintiffs and the class to the maximum extent allowable under N.Y. Gen. Bus. L. § 349.

155.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants have engaged in unfair or deceptive acts or practices that violated N.Y. Gen. Bus. L. 349, as described above and below, by among other things, representing that the Class Vehicles and/or the Defective ACUs installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard, quality, and grade when they are not; advertising them with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving them has been supplied in accordance with a previous representation when it has not.

156.    In the course of its business, the FCA-Hyundai-Kia-Toyota-Toyota Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive

157.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants also engaged in unlawful trade practices by representing that the Class Vehicles and/or the Defective ACUs installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell or lease them as advertised; and omitting material facts in describing them. The FCA-Hyundai-Kia-Toyota-Toyota Defendants are directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the CLRA. Defendant parent companies are also liable for their subsidiaries' violation of the CLRA, because the subsidiaries act and acted as the parent companies' general agents in the United States for purposes of sales and marketing.

158.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants have known of the ASIC Defect in the Defective ACUs since at least August of 2011, when the airbag non-deployment crashes were first attributed to damage of the ASIC by EOS. The FCA-Hyundai-Kia-Toyota-Toyota Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them.

159.    By failing to disclose and by actively concealing the ASIC Defect in the Class Vehicles and/or the Defective ACUs installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, the FCA-Hyundai-Kia-Toyota-Toyota Defendants engaged in unfair or deceptive business practices in violation of the CLRA. The FCA-Hyundai-Kia-Toyota-Toyota Defendants deliberately withheld the information about the propensity of the Defective ACUs to fail to deploy airbags and seat belt pretensioners in a crash event due to the ASICs being damages by EOS, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

160.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective ACUs installed in them with an intent to mislead the Consumer Plaintiffs and the New York Consumer Class.

161.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants knew or should have known that their conduct violated the CLRA.

162.    As alleged above, the FCA-Hyundai-Kia-Toyota-Toyota Defendants made material statements about the safety and reliability of the Class Vehicles and/or the Defective ACUs installed in them that were either false or misleading. The FCA-Hyundai-Kia-Toyota-Toyota Defendants' representations, omissions, statements, and commentary have included

selling and marketing the Class Vehicles as "safe" and "reliable," despite its knowledge of the ASIC Defect or its failure to reasonably investigate it.

163.    To protect their profits and to avoid remediation costs and a public relations nightmare, the FCA-Hyundai-Kia-Toyota-Toyota Defendants concealed the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles and to continue driving highly dangerous vehicles.

164.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants owed the Plaintiffs and the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective ACUs installed in them because the FCA-Hyundai-Kia-Toyota-Toyota Defendants:

> (a) Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

> (b) Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

> (c) Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Plaintiffs and the Class that contradicted these representations.

165.    The Class Vehicles and/or the Defective ACUs installed in them posed and/or pose an unreasonable risk of death or serious bodily injury to the Class, passengers, other motorists, pedestrians, and the public at large, because the Defective ACUs are inherently defective and dangerous in that the Defective ACUs will not deploy lifesaving safety measures of airbags and seatbelt pretensioners, which increases the risk of bodily injury during accidents to drivers and passengers.

166.     The FCA-Hyundai-Kia-Toyota-Toyota Defendants' unfair or deceptive acts or practices were likely to deceive reasonable consumers, including the Class, about the true safety and reliability of the Class Vehicles and/or the Defective ACUs installed in them. The FCA-Hyundai-Kia-Toyota-Toyota Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective ACUs installed in them with an intent to mislead the Class.

167.     The FCA-Hyundai-Kia-Toyota-Toyota Defendants has also violated the CLRA by violating the TREAD Act, 49 U.S.C. § 30101, and its accompanying regulations by failing to promptly notify vehicle owners, purchases, dealers, and NHTSA of the defective Class Vehicles and/or the Defective ACUs installed in them and failing to remedy the ASIC Defect.

168.     Under the TREAD Act and its regulations, if a manufacturer learns that a vehicle contains a defect and that defect is related to motor vehicle safety, the manufacturer must disclose the defect. 49 U.S.C. § 30118(c)(1) & (2).

169.     Under the TREAD Act, if it is determined that the vehicle is defective, the manufacturer must promptly notify vehicle owners, purchasers, and dealers of the defect and remedy the defect. 49 U.S.C. § 30118(b)(2)(A) & (B).

170.     Under the TREAD Act, manufacturers must also file a report with NHTSA within five working days of discovering "a defect in a vehicle or item of equipment has been determined to be safety related, or a noncompliance with a motor vehicle safety standard has been determined to exist." 49 C.F.R. § 573.6(a) & (b). At a minimum, the report to NHTSA must include: the manufacturer's name; the identification of the vehicles or equipment containing the defect, including the make, line, model year, and years of manufacturing; a description of the basis for determining the recall population; how those vehicles differ from similar vehicles that

the manufacturer excluded from the recall; and a description of the defect. 49 C.F.R. § 276.6(b), (c)(1), (c)(2), & (c)(5).

171.   The manufacturer must also promptly inform NHTSA regarding: the total number of vehicles or equipment potentially containing the defect; the percentage of vehicles estimated to contain the defect; a chronology of all principal events that were the basis for the determination that the defect related to motor vehicle safety, including a summary of all warranty claims, field or service reports, and other information, with its dates of receipt; and a description of the plan to remedy the defect. 49 C.F.R. § 276.6(b) & (c).

172.   The TREAD Act provides that any manufacturer who violates 49 U.S.C. § 30166 must pay a civil penalty to the U.S. Government. The current penalty "is $7,000 per violation per day," and the maximum penalty "for a related series of daily violations is $17,350,000." 49 C.F.R. § 578.6(c).

173.   The FCA-Hyundai-Kia-Toyota-Toyota Defendants engaged in deceptive business practices prohibited by the CLRA and Cal. Civ. Code § 1750, by failing to disclose and by actively concealing dangers and risks posed by the Defective ACUs, by selling vehicles while violating the TREAD Act, and by other conduct as alleged herein.

174.   The FCA-Hyundai-Kia-Toyota-Toyota Defendants knew that the Class Vehicles and/or the Defective ACUs installed in them contained the ASIC Defect that could cause a failure of deployment of airbags and seat belt pretensioners, but the FCA-Hyundai-Kia-Toyota-Toyota Defendants failed for many years to inform NHTSA of this defect. Consequently, the public, including the Class, received no notice of the ASIC Defect. The FCA-Hyundai-Kia-Toyota-Toyota Defendants failed to inform NHTSA or warn the Class, and the public about these inherent dangers, despite having a duty to do so.

175.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Class members, about the true safety and reliability of the Class Vehicles and/or the Defective ACUs installed in them.

176.    Because    the    FCA-Hyundai-Kia-Toyota-Toyota    Defendants    fraudulently concealed the ASIC Defect in Class Vehicles and/or the Defective ACUs installed in them, resulting in negative publicity once the ASIC Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by the FCA-Hyundai-Kia-Toyota-Toyota Defendants' conduct, they are now worth significantly less than they otherwise would be.

177.    The FCA-Hyundai-Kia-Toyota-Toyota Defendants' failure to disclose and active concealment of the dangers and risks posed by the Defective ACUs in Class Vehicles were material to the Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

178.    The Class suffered ascertainable loss caused by the FCA-Hyundai-Kia-Toyota-Toyota Defendants' misrepresentations and its failure to disclose material information. Had they been aware of the ASIC Defect that existed in the Class Vehicles and/or the Defective ACUs installed in them and the FCA-Hyundai-Kia-Toyota-Toyota Defendants' complete disregard for safety, the Class members either would not have paid as much for their vehicles as they did or would not have purchased or leased them at all. Class members did not receive the benefit of their bargain as a result of the FCA-Hyundai-Kia-Toyota-Toyota Defendants' misconduct.

179.    The Class risk irreparable injury as a result of the FCA-Hyundai-Kia-Toyota-Toyota Defendants' acts and omissions in violation of the CLRA, and these violations present a continuing risk to the Class, as well as to the general public. The FCA-Hyundai-Kia-Toyota-Toyota Defendants' unlawful acts and practices complained of herein affect the public interest.

180.    The recalls and repairs instituted by The FCA-Hyundai-Kia-Toyota-Toyota Defendants have not been adequate. The recall is not an effective remedy and is not offered for all Class Vehicles and other vehicles with Defective ACUs susceptible to the malfunctions described herein. Moreover, The FCA-Hyundai-Kia-Toyota-Toyota Defendants' failure to comply with TREAD Act disclosure obligations continues to pose a grave risk to the Class.

181.    As a direct and proximate result of the FCA-Hyundai-Kia-Toyota-Toyota Defendants' violations of the CLRA, the Class members have suffered injury-in-fact and/or actual damage. The Class currently own or lease or within the class period have owned or leased Class Vehicles with Defective ACUs installed in them that are defective and inherently unsafe. The Class risk irreparable injury as a result of the FCA-Hyundai-Kia-Toyota-Toyota Defendants' acts and omissions in violation of the CLRA, and these violations present a continuing risk to the Class, as well as to the general public.

182. The FCA-Hyundai-Kia-Toyota-Toyota Defendants also engaged in violations of the TREAD Act, 49 U.S.C. § 30101, and its accompanying regulations by failing to promptly notify vehicle owners, purchases, dealers, and NHTSA of the defective Class Vehicles and/or the Defective ACUs installed in them and failing to remedy the ASIC Defect.

183. Federal Motor Vehicle Safety Standard ("FMVSS") 573 governs a motor vehicle manufacturer's responsibility to notify the NHTSA of a motor vehicle defect within five days of

determining that a defect in a vehicle has been determined to be safety-related. See 49 C.F.R. § 573.6.

184. The FCA-Hyundai-Kia-Toyota-Toyota Defendants violated the reporting requirements of FMVSS 573 by failing to report the ASIC Defect or any of the other dangers or risks posed by the Defective ACUs within five days of determining the defect existed, and failing to recall all Class Vehicles.

185. The FCA-Hyundai-Kia-Toyota-Toyota Defendants violated the common-law claim of negligent failure to recall, because the FCA-Hyundai-Kia-Toyota-Toyota Defendants knew or should have known that the Class Vehicles and/or the Defective ACUs installed in them were dangerous and/or were likely to be dangerous when used in a reasonably foreseeable manner; the FCA-Hyundai-Kia-Toyota-Toyota Defendants became aware of the attendant risks after they were sold; The FCA-Hyundai-Kia-Toyota Defendants continued to gain information further corroborating the ASIC Defect and dangers posed by it; and the FCA-Hyundai-Kia-Toyota Defendants failed to adequately recall the defective vehicles in a timely manner, which failure was a substantial factor in causing harm to Plaintiffs and the Class, including diminished value and out-of- pocket costs.

186. Furthermore, pursuant to N.Y. Gen. Bus. L. § 349 (h), "In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court

finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

187. Plaintiffs further makes a claim for all of the above damages pursuant to N.Y. Gen. Bus. L. § 349 (h).

188. Pursuant to N.Y. Gen. Bus. L. § 349(h), plaintiffs and the class seek an Order enjoining FCA-Hyundai-Kia-Toyota Defendants from continuing to engage in unlawful acts or practices, false advertising, and any other acts prohibited by law, including those set forth in this Complaint.

## Count Seven
## Violation of New York Gen Bus. L. § 350

189.    Plaintiffs bring this claim on behalf of themselves and the members of the Class and the New York Subclass against the FCA-Hyundai-Kia-Toyota Defendants.

190.    FCA-Hyundai-Kia-Toyota Defendants have engaged and is engaging in consumer-oriented conduct which is deceptive or misleading in a material way, constituting false advertising in the conduct of any business, trade, or commerce, in violation of N.Y. Gen. Bus. L. § 350. 91.

191.    FCA-Hyundai-Kia-Toyota Defendants knew, or reasonably should have known, that marketing the class vehicles and their TRW aribags as safe and effective was untrue or misleading.

192.    As a result of FCA-Hyundai-Kia-Toyota Defendants' false advertising, plaintiffs and the class have suffered and continue to suffer substantial injury, including damages, which would not have occurred but for the false and deceptive advertising, and which will continue to occur unless FCA-Hyundai-Kia-Toyota Defendants is permanently enjoined by this Court.

**Count Eight**
**Breach of Implied Warranty of Merchantability/Warranty**

193.    Plaintiffs bring this claim on behalf of themselves and the members of the Class against the FCA-Hyundai-Kia-Toyota Defendants with regard to Class Vehicles that the FCA-Hyundai-Kia-Toyota Defendants manufactured or sold.

194.    The FCA-Hyundai-Kia-Toyota Defendants were at all relevant times "merchants" with respect to motor vehicles. With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

195.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

196.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

197.    At the time Plaintiffs and the Class acquired their Class Vehicles, those vehicles had a redhibitory defect in that (a) the Class Vehicles and/or the Defective ACUs installed in them were rendered so inconvenient that Plaintiffs either would not have purchased the Class Vehicles had they known of the ASIC Defect, or, because the Defective ACUs so diminished the usefulness and/or value of the Class Vehicles such that it must be presumed that the Plaintiffs would not have purchased the Class Vehicles, but for a lesser price.

198.    No notice of the defect is required since the FCA-Hyundai-Kia-Toyota Defendants had knowledge of the ASIC Defect in the Class Vehicles and/or the Defective ACUs installed in them at the time they were sold to Plaintiffs and the Class. Furthermore, on information and belief, the FCA-Hyundai-Kia-Toyota Defendants had notice of these issues by

their knowledge of the issues, through customer complaints, numerous complaints filed against it and/or others, internal investigations, and individual letters and communications sent by consumers before the FCA-Hyundai-Kia-Toyota Defendants issued the recalls and after the allegations of the ASIC Defect became public.

199.    A warranty that the Class Vehicles and/or the Defective ACUs installed in them were in merchantable condition, or fit for ordinary use, was implied by law in the transactions when Plaintiffs and Class members purchased their Class Vehicles.

200.    The Class Vehicles and/or the Defective ACUs installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used. Specifically, they are inherently defective and dangerous in that the Defective ACUs which among other things, may fail to deploy airbags and seat belt pretensioners in a crash event due to the ASICs being damages by EOS, leading to an unreasonable likelihood of serious bodily injury or death to vehicle occupants, instead of protecting vehicle occupants from bodily injury during accidents.

201.    As a direct and proximate result of the FCA-Hyundai-Kia-Toyota Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

<u>**Count Nine**</u>
<u>**Breach of Express Warranty**</u>

202.    Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

203.    Plaintiff brings this cause of action on behalf of themselves, the Class and the members of the New York Subclass.

204.    FCA-Hyundai-Kia-Toyota Defendants are and were at all relevant times a "merchant" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

205.    With respect to leases, FCA-Hyundai-Kia-Toyota Defendants is and was at all relevant times a "lessor" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

206.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

207.    In connection with the purchase or lease of each of the Class Vehicles, FCA provided Plaintiff and members of the Class and New York Subclass with one or more express warranties, including: (1) a Basic Limited Warranty which includes virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for 5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service, which covers engine and transmission parts including the TRW Airbag.

208.    Under warranties provided to Plaintiff and members of the Class and New York Subclass, FCA-Hyundai-Kia-Toyota Defendants promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the TRW Airbag, at no cost to owners and lessees of the Class Vehicles.

209.    As manufacturers, FCA-Hyundai-Kia-Toyota Defendants was required to provide these warranties to purchasers or lessees of the Class Vehicles.

210.    FCA-Hyundai-Kia-Toyota Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and other members of the New York Subclass purchased or leased from FCA-Hyundai-Kia-Toyota their Class Vehicles equipped with the defective TRW Airbag.

211.    Plaintiff and the New York Subclass members experienced defects within the warranty period. Despite the existence of warranties, FCA-Hyundai-Kia-Toyota Defendants failed to inform Plaintiff and New York Subclass members that the Class Vehicles were designed and manufactured in such a way as to present an inherent safety risk, including, but not limited to, severely affecting the driver's ability to control the car's speed, acceleration, and deceleration.

212.    FCA-Hyundai-Kia-Toyota Defendants breached the express warranty promising to repair and correct a manufacturing defect or materials or workmanship of any parts they supplied. FCA has not yet provided an adequate and complete remedy to the safety and usability issues presented by the defective TRW Airbag in the Class Vehicles.

213.    Affording FCA-Hyundai-Kia-Toyota Defendants a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile.

214.    Furthermore, the limited warranty promising to repair and/or correct a defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other New York Subclass members whole and because FCA-Hyundai-Kia-Toyota Defendants has failed and/or has refused to provide an adequate and complete remedy within a reasonable time.

215.    Accordingly, recovery by Plaintiff and the other New York Subclass members is not restricted to the limited warranty promising to repair and/or correct a defect, and Plaintiff, individually and on behalf of the other New York Subclass members, seeks all remedies as allowed by law.

216.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacements or adjustments," as many incidental and

consequential damages have already been suffered because of FCA-Hyundai-Kia-Toyota Defendants' conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other New York Subclass members' remedies would be insufficient to make Plaintiff and the other New York Subclass members whole.

217.    Finally, because of FCA-Hyundai-Kia-Toyota Defendants' breach of warranty as set forth herein, Plaintiff and the other New York Subclass members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the other New York Subclass members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

218.    FCA-Hyundai-Kia-Toyota Defendants were provided notice of these issues by the investigations of the NHTSA, numerous complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiff, and others within a reasonable amount of time after the allegations of defects in the Class Vehicles became public.

219.    As a direct and proximate result of FCA's breach of express warranties, Plaintiff and the other New York Subclass members have been damaged in an amount to be determined at trial.

## IV. PENNSYLVANIA STATUTORY CLAIMS

### Count Ten
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (PA. UTPCPL)

215.    Plaintiff brings this cause of action on behalf of the Class and the members of the Pennsylvania Subclass.

216.    The Defendant violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201, et seq. (hereinafter referred to "UTPCPL").

217.    Defendant engaged in unfair and deceptive business practices in violation of 73 P.S. 201-9.2., and as such is liable to Plaintiffs under the UTPCPL.

218.    Plaintiffs suffered an ascertainable loss, as a result of the use or employment Defendant of a method, act or practice declared unlawful by the UTPCPL.

219.    Plaintiff was damaged by Defendant's bad faith violations of UTPCPL.

220.    Plaintiff seeks an award up to three times the actual damages sustained, and any such other or further additional relief as the Court or a jury deems necessary or proper.

221.    As a direct and proximate result of the FCA-Hyundai-Kia-Toyota Defendants' violation of the Pennsylvania Unfair Trade Practices And Consumer Protection Law Plaintiffs and the Class have been damaged in an amount to be proven at trial.

<u>Count Eleven</u>
<u>Breach of Implied Warranty of Merchantability/Warranty</u>

222.    Plaintiffs bring this claim on behalf of themselves and the members of the Class and Pennsylvania subclass against the FCA-Hyundai-Kia-Toyota Defendants with regard to Class Vehicles that the FCA-Hyundai-Kia-Toyota Defendants manufactured or sold.

223.    The FCA-Hyundai-Kia-Toyota Defendants were at all relevant times "merchants" with respect to motor vehicles. With respect to leases, Defendants is and was at all relevant times a "lessor" of motor vehicles under 13 Pa.C.S. 2101-2104, et seq.

224.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa.C.S. 2101-2104 and 9102,  et seq.

225.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 13 Pa.C.S. 2101-2104, et seq.

226.    At the time Plaintiffs and the Class acquired their Class Vehicles, those vehicles had a redhibitory defect in that (a) the Class Vehicles and/or the Defective ACUs installed in them were rendered so inconvenient that Plaintiffs either would not have purchased the Class Vehicles had they known of the ASIC Defect, or, because the Defective ACUs so diminished the usefulness and/or value of the Class Vehicles such that it must be presumed that the Plaintiffs would not have purchased the Class Vehicles, but for a lesser price.

227.    No notice of the defect is required since the FCA-Hyundai-Kia-Toyota Defendants had knowledge of the ASIC Defect in the Class Vehicles and/or the Defective ACUs installed in them at the time they were sold to Plaintiffs and the Class. Furthermore, on information and belief, the FCA-Hyundai-Kia-Toyota Defendants had notice of these issues by their knowledge of the issues, through customer complaints, numerous complaints filed against it and/or others, internal investigations, and individual letters and communications sent by consumers before the FCA-Hyundai-Kia-Toyota Defendants issued the recalls and after the allegations of the ASIC Defect became public.

228.    A warranty that the Class Vehicles and/or the Defective ACUs installed in them were in merchantable condition, or fit for ordinary use, was implied by law in the transactions when Plaintiffs and Class and sub-class members purchased their Class Vehicles.

229.    The Class Vehicles and/or the Defective ACUs installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used. Specifically, they are inherently defective and dangerous in that the

Defective ACUs which among other things, may fail to deploy airbags and seat belt pretensioners in a crash event due to the ASICs being damages by EOS, leading to an unreasonable likelihood of serious bodily injury or death to vehicle occupants, instead of protecting vehicle occupants from bodily injury during accidents.

230.    As a direct and proximate result of the FCA-Hyundai-Kia-Toyota Defendants' breach of the warranties of merchantability, Plaintiffs, the Class and the Pennsylvania Subclass have been damaged in an amount to be proven at trial.

<u>**Count Twelve**</u>
<u>**Breach of Express Warranty**</u>

231.    Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

232.    Plaintiff brings this cause of action on behalf of themselves, the Class and the members of the Pennsylvania Subclass.

233.    FCA-Hyundai-Kia-Toyota Defendants are and were at all relevant times a "merchant" with respect to motor vehicles under 13 Pa.C.S. 2101-2104 and 9102. With respect to leases, Defendants is and was at all relevant times a "lessor" of motor vehicles under 13 Pa.C.S. 2101-2104, et seq.

234.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa.C.S. 2101-2104 and 9102,  et seq.

235.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 13 Pa.C.S. 2101-2104, et seq. and a "seller" of motor vehicles under 13 Pa.C.S. 2101-2104 and 9102.

236.    With respect to leases, FCA-Hyundai-Kia-Toyota Defendants is and was at all relevant times a "lessor" of motor vehicles under 13 Pa.C.S. 2101-2104 and 9102.

237.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa.C.S. 2101-2104 and 9102.

238.    In connection with the purchase or lease of each of the Class Vehicles, FCA provided Plaintiff and members of the Class and Pennsylvania Subclass with one or more express warranties, including: (1) a Basic Limited Warranty which includes virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for 5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service, which covers engine and transmission parts including the TRW Airbag.

239.    Under warranties provided to Plaintiff and members of the Class and New York Subclass, FCA-Hyundai-Kia-Toyota Defendants promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the TRW Airbag, at no cost to owners and lessees of the Class Vehicles.

240.    As manufacturers, FCA-Hyundai-Kia-Toyota Defendants was required to provide these warranties to purchasers or lessees of the Class Vehicles.

241.    FCA-Hyundai-Kia-Toyota Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and other members of the Pennsylvania Subclass purchased or leased from FCA-Hyundai-Kia-Toyota their Class Vehicles equipped with the defective TRW Airbag.

242.    Plaintiff and the Pennsylvania Subclass members experienced defects within the warranty period. Despite the existence of warranties, FCA-Hyundai-Kia-Toyota Defendants failed to inform Plaintiff and Pennsylvania Subclass members that the Class Vehicles were designed and manufactured in such a way as to present an inherent safety risk, including, but not

limited to, severely affecting the driver's ability to control the car's speed, acceleration, and deceleration.

243.    FCA-Hyundai-Kia-Toyota Defendants breached the express warranty promising to repair and correct a manufacturing defect or materials or workmanship of any parts they supplied. FCA has not yet provided an adequate and complete remedy to the safety and usability issues presented by the defective TRW Airbag in the Class Vehicles.

244.    Affording FCA-Hyundai-Kia-Toyota Defendants a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile.

245.    Furthermore, the limited warranty promising to repair and/or correct a defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other New York Subclass members whole and because FCA-Hyundai-Kia-Toyota Defendants has failed and/or has refused to provide an adequate and complete remedy within a reasonable time.

246.    Accordingly, recovery by Plaintiff and the other Pennsylvania Subclass members is not restricted to the limited warranty promising to repair and/or correct a defect, and Plaintiff, individually and on behalf of the other Pennsylvania Subclass members, seeks all remedies as allowed by law.

247.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacements or adjustments," as many incidental and consequential damages have already been suffered because of FCA-Hyundai-Kia-Toyota Defendants' conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the

other Pennsylvania Subclass members' remedies would be insufficient to make Plaintiff and the other Pennsylvania Subclass members whole.

248.    Finally, because of FCA-Hyundai-Kia-Toyota Defendants' breach of warranty as set forth herein, Plaintiff and the other Pennsylvania Subclass members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the other New York Subclass members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

249.    FCA-Hyundai-Kia-Toyota Defendants were provided notice of these issues by the investigations of the NHTSA, numerous complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiff, and others within a reasonable amount of time after the allegations of defects in the Class Vehicles became public.

250.    As a direct and proximate result of FCA's breach of express warranties, Plaintiff and the other Pennsylvania Subclass members have been damaged in an amount to be determined at trial.

## V.  GEORGIA STATUTORY CLAIMS

### Count Thirteen
### Violation of the Georgia Fair Business Practices Act, § 10-1-390 et seq.

222.    Plaintiff brings this cause of action on behalf of the Class and the members of the Georgia Subclass.

223.    Defendants have violated Georgia's Fair Business Practices Act ("FBPA"), O.C.G.A. § 10-1-390 *et seq.* Defendants' actions constitute unfair or deceptive acts or practices

in the conduct of consumer transactions in trade or commerce and therefore violate Georgia's

Fair Business Practices Act ("FBPA"), O.C.G.A. § 10-1-390 *et seq.*

224.    Defendants committed unfair or deceptive acts or practices in the conduct of

consumer transactions and consumer acts or practices in trade or commerce are declared

unlawful. Such acts include:

a.  Passing off goods or services as those of another;

b.  Causing actual confusion or actual misunderstanding as to the source;

c.  sponsorship, approval, or certification of goods or services;

d.  Causing actual confusion or actual misunderstanding as to affiliation, connection, or association with or certification by another;

e.  Using deceptive representations or designations of geographic origin in connection with goods or services.

f.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

g.  Representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, or secondhand;

h.  Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;

i.  Disparaging goods, services, or business of another by false or misleading representation;

j.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

k.   Representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, or secondhand;

l.   Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another.

225.   As a direct and proximate result of the FCA-Hyundai-Kia-Toyota Defendants' violation of the Georgia Fair Business Practices Act, § 10-1-390 *et seq.,* Plaintiffs, the Class and the Georgia Subclass have been damaged in an amount to be proven at trial.

<u>**Count Fourteen**</u>
<u>**Breach of Implied Warranty of Merchantability/Warranty**</u>

226.   Plaintiffs bring this claim on behalf of themselves and the members of the Class and Georgia subclass against the FCA-Hyundai-Kia-Toyota Defendants with regard to Class Vehicles that the FCA-Hyundai-Kia-Toyota Defendants manufactured or sold.

227.   The FCA-Hyundai-Kia-Toyota Defendants were at all relevant times "merchants" with respect to motor vehicles. With respect to leases, Defendants is and was at all relevant times a "lessor" of motor vehicles under O.C.G.A. 11-2-314 11-2-316, et seq.

228.   The Class Vehicles are and were at all relevant times "goods" within the meaning of O.C.G.A. 11-2-314 11-2-316, et seq.et seq.

229.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to O.C.G.A. 11-2-314 11-2-316, et seq. et seq.

230.    At the time Plaintiffs and the Class acquired their Class Vehicles, those vehicles had a redhibitory defect in that (a) the Class Vehicles and/or the Defective ACUs installed in them were rendered so inconvenient that Plaintiffs either would not have purchased the Class Vehicles had they known of the ASIC Defect, or, because the Defective ACUs so diminished the usefulness and/or value of the Class Vehicles such that it must be presumed that the Plaintiffs would not have purchased the Class Vehicles, but for a lesser price.

231.    No notice of the defect is required since the FCA-Hyundai-Kia-Toyota Defendants had knowledge of the ASIC Defect in the Class Vehicles and/or the Defective ACUs installed in them at the time they were sold to Plaintiffs and the Class. Furthermore, on information and belief, the FCA-Hyundai-Kia-Toyota Defendants had notice of these issues by their knowledge of the issues, through customer complaints, numerous complaints filed against it and/or others, internal investigations, and individual letters and communications sent by consumers before the FCA-Hyundai-Kia-Toyota Defendants issued the recalls and after the allegations of the ASIC Defect became public.

232.    A warranty that the Class Vehicles and/or the Defective ACUs installed in them were in merchantable condition, or fit for ordinary use, was implied by law in the transactions when Plaintiffs and Class and sub-class members purchased their Class Vehicles.

233.    The Class Vehicles and/or the Defective ACUs installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used. Specifically, they are inherently defective and dangerous in that the Defective ACUs which among other things, may fail to deploy airbags and seat belt pretensioners in a crash event due to the ASICs being damages by EOS, leading to an

unreasonable likelihood of serious bodily injury or death to vehicle occupants, instead of protecting vehicle occupants from bodily injury during accidents.

234.    As a direct and proximate result of the FCA-Hyundai-Kia-Toyota Defendants' breach of the warranties of merchantability, Plaintiffs, the Class and the Georgia Subclass have been damaged in an amount to be proven at trial.

## Count Twelve
## Breach of Express Warranty

235.    Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

236.    Plaintiff brings this cause of action on behalf of themselves, the Class and the members of the Georgia Subclass.

237.    FCA-Hyundai-Kia-Toyota Defendants are and were at all relevant times a "merchant" with respect to motor vehicles under O.C.G.A. 11-2-314 11-2-316, et seq.. With respect to leases, Defendants is and was at all relevant times a "lessor" of motor vehicles under O.C.G.A. 11-2-314 11-2-316, et seq.

238.    The Class Vehicles are and were at all relevant times "goods" within the meaning of O.C.G.A. 11-2-314 11-2-316, et seq.

239.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 13 O.C.G.A. 11-2-314 11-2-316, et seq.and a "seller" of motor vehicles under O.C.G.A. 11-2-314 11-2-316, et seq.

240.    With respect to leases, FCA-Hyundai-Kia-Toyota Defendants is and was at all relevant times a "lessor" of motor vehicles under O.C.G.A. 11-2-314 11-2-316, et seq.

73

241.    The Class Vehicles are and were at all relevant times "goods" within the meaning of O.C.G.A. 11-2-314 11-2-316, et seq.

242.    In connection with the purchase or lease of each of the Class Vehicles, FCA provided Plaintiff and members of the Class and Georgia Subclass with one or more express warranties, including: (1) a Basic Limited Warranty which includes virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for 5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service, which covers engine and transmission parts including the TRW Airbag.

243.    Under warranties provided to Plaintiff and members of the Class and Georgia Subclass, FCA-Hyundai-Kia-Toyota Defendants promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the TRW Airbag, at no cost to owners and lessees of the Class Vehicles.

244.    As manufacturers, FCA-Hyundai-Kia-Toyota Defendants was required to provide these warranties to purchasers or lessees of the Class Vehicles.

245.    FCA-Hyundai-Kia-Toyota Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and other members of the Georgia Subclass purchased or leased from FCA-Hyundai-Kia-Toyota their Class Vehicles equipped with the defective TRW Airbag.

246.    Plaintiff and the Georgia Subclass members experienced defects within the warranty period. Despite the existence of warranties, FCA-Hyundai-Kia-Toyota Defendants failed to inform Plaintiff and Georgia Subclass members that the Class Vehicles were designed and manufactured in such a way as to present an inherent safety risk, including, but not limited to, severely affecting the driver's ability to control the car's speed, acceleration, and deceleration.

247. FCA-Hyundai-Kia-Toyota Defendants breached the express warranty promising to repair and correct a manufacturing defect or materials or workmanship of any parts they supplied. FCA has not yet provided an adequate and complete remedy to the safety and usability issues presented by the defective TRW Airbag in the Class Vehicles.

248. Affording FCA-Hyundai-Kia-Toyota Defendants a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile.

249. Furthermore, the limited warranty promising to repair and/or correct a defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Georgia Subclass members whole and because FCA-Hyundai-Kia-Toyota Defendants has failed and/or has refused to provide an adequate and complete remedy within a reasonable time.

250. Accordingly, recovery by Plaintiff and the other Georgia Subclass members is not restricted to the limited warranty promising to repair and/or correct a defect, and Plaintiff, individually and on behalf of the other Georgia Subclass members, seeks all remedies as allowed by law.

251. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacements or adjustments," as many incidental and consequential damages have already been suffered because of FCA-Hyundai-Kia-Toyota Defendants' conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Georgia Subclass members' remedies would be insufficient to make Plaintiff and the other Georgia Subclass members whole.

252. Finally, because of FCA-Hyundai-Kia-Toyota Defendants' breach of warranty as set forth herein, Plaintiff and the other Georgia Subclass members assert, as additional and/or

alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the other Georgia Subclass members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

253. FCA-Hyundai-Kia-Toyota Defendants were provided notice of these issues by the investigations of the NHTSA, numerous complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiff, and others within a reasonable amount of time after the allegations of defects in the Class Vehicles became public.

254. As a direct and proximate result of FCA's breach of express warranties, Plaintiff and the other Georgia Subclass members have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

255. Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against the FCA-Hyundai-Kia-Toyota Defendants and ZF-TRW, as follows:

(a) An order certifying the proposed Class, designating Plaintiffs as the named representatives of the Class, designating the undersigned as Class Counsel, and making such further orders for the protection of Class members as the Court deems appropriate, under Fed. R. Civ. P. 23;

(b) An order enjoining the FCA-Hyundai-Kia-Toyota Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles and such other injunctive relief that the Court deems just and proper;

(c) An award to Plaintiffs and Class Members of compensatory, exemplary, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven at trial;

(d) An award to Plaintiffs and Class Members for the return of the purchase prices of the Class Vehicles, with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale, for damages, and for reasonable attorney fees;

(e) A Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket and loss-of-use expenses and damages claims associated with the Defective ACUs in Plaintiffs' and Class Members' Class Vehicles, can be made and paid, such that the FCA-Hyundai-Kia-Toyota Defendants and ZF-TRW, not the Class Members, absorb the losses and expenses fairly traceable to the recalls of the vehicles and correction of the Defective ACUs;

(f) A declaration that the FCA-Hyundai-Kia-Toyota Defendants and ZF-TRW must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles or make full restitution to Plaintiffs and Class Members;

(g) An award of attorneys' fees and costs, as allowed by law;

(h) An award of prejudgment and post judgment interest, as provided by law; and

(i) Such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

Dated: Melville, New York
      May 10, 2019

Respectfully submitted,

**NAPOLI SHKOLNIK PLLC**

/s/ Paul J. Napoli
Paul J. Napoli
Hunter J. Shkolnik
Nicholas R. Farnolo
400 Broadhollow Road
Melville, NY 11747
Telephone: (212) 397-1000
Facsimile: (646)843-7603
NFarnolo@NapoliLaw.com

*Attorney for Plaintiff*